William E. McClusky, J.
This is an action for a declaratory judgment, adjudging that the zoning ordinance adopted by the Town of Clay was and is unconstitutional and of no effect insofar as plaintiffs herein are concerned.
The Town of Clay is one of the townships of the County of Onondaga. Pursuant to article 16 of the Town Law of the State of New York, the Town Board enacted a zoning ordinance for the town, effective March 11, 1955. The ordinance classified the land in the township into 11 different categories, including one designated as “ Open Lands District ” (art. Ill, § 3).
In the town was a parcel of land known as the Studier Farm consisting of about 14 acres. It is located on the north side of the C'aughdenoy Road about opposite the northern end of the Swamp Road. It was used as a farm by Mr. Studier during his lifetime and continued until a few years after his death. The farmhouse was located in the southeast portion of the premises and in the rear but east of the house was a barn or garage. In the rear but some distance north of the garage and near the east line of the premises was an orchard and woods. The son, Ralph Studier, has been in the trucking business over 20 years but as a side line bought, sold, stripped and junked cars, using the area along the east side of the premises, north of the garage and south of the orchard. Subsequently he sold his interest in the side line to Taylor and Newton, who continued to operate the business until June 20, 1955. But at no time did the entrepreneurs ever use the entire 14 acres. In fact they did not use more than one and a half acres. In 1953 and 1954 the Studiers rented to Frank Chairvoletti 12 acres of the premises for truck gardening. He cultivated the premises from the west line to within 10 feet of the west side of the Studier farmhouse and northerly and easterly to a line some six to eight feet west of the orchard. In 1955 his brother farmed the same area until November, 1955. It is clear, therefore, that at the time the ordinance became effective and for many years prior *858 to that date that the premises were used entirely for farming except for a small area of about one and one-half acres. Those 12 or more acres were not used for the operation of a junk yard. Since 1956 the auto junk business has expanded tremendously. Aerial photos show that instead of 2 rows of cars in 1951 there are at least 12 rows now. Dollarwise the business has expanded from a gross of $2,000 to over $40,000 per year.
Section 11 of article III of the ordinance specifies the uses to which open land may be put. The permitted uses are all uses specified for Residential 1 and 2 of the ordinance and farms and farming, farm structures and sale of farm products.
There is no provision for the use of “ open land ” as an auto graveyard or auto j Link yard. The Studier farm was and is an “Open Land District ”, The farm has a frontage of about 450 feet on the Caughdenoy Road and extends back by parallel lines for at least 1,82'5 feet, Across the center of the farm and about half way back and 50 feet wide was a low or wet spot, extending northeast and southwest.
On July 27, 1955 the plaintiffs herein leased an indeterminate portion of the Studier Farm from Mrs. Studier. Later and about August 21, 1956, the plaintiffs purchased two acres of the land from the owner and in November of the same year they purchased five acres more. The two deeds cover approximately the westerly half of the Studier Farm. The plaintiffs made application to the Town Board to change the zone of the property they had purchased from “ Open Land” to Commercial “ D ”. On September 7, 1958 the application was denied. Later and on April 19, 1959 complaints were received by the Town Board of the use of the Studier property for nonzoned purposes. The enforcement officer of the town was directed by the board to proceed to enforce the ordinance against the owners and users of the Studier property. This action thereupon followed,
It should be noted at the outset of this discussion that the plaintiffs have conceded that the ordinance in general is constitutional. Indeed no proof was offered which would indicate to the contrary. The questions submitted resolve themselves into these: Was there a nonconforming use being made of the premises on March 11, 19551 If there was, what was its nature and extent? As a subsidiary question, there is submitted the question as to whether or not any nonconforming use has been extended? If so, was the extension permissible?
Article VI of the Zoning Ordinance deals with nonconforming uses. The very first sentence of the article is as follows: “ The lawful use of any building or land existing at the time of the *859 enactment of this ordinance may be continued although such use does not conform with the provisions of this ordinance.” The whole article is a very detailed statement of the laws generally applicable to such a case. There are two specific provisions applying to the nonconforming use. The first one is that “ a nonconforming use cannot be changed to anything other than a conforming use ” and the second one is that “ no nonconforming use shall be extended to displace a nonconforming use. ’ ’
Now it is the well-established law of this State “ that nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance.” (People v. Miller, 304 N. Y. 105.)
In the instant case, we are not considering an extension of a use of a building or buildings. Quite the contrary for there are no buildings involved, except the original garage. There is no proof that at the time the ordinance was enacted that the Studiers contemplated the use of the 14 acres or a substantial part thereof for an auto-junk yard. The land was used almost entirely for farming purposes. The contiguous and adjacent area was and still is farmland. There was no vested right in the plaintiffs or their predecessors in title to use the entire farm for auto junking. (New York Trap Rock Corp. v. Town of Clarkstown, 1 A D 2d 890.)
“ The spirit of zoning is to restrict rather than to increase a nonconforming use and to eliminate such uses as speedily as possible.” (2 Rathkopf, Law of Zoning and Planning, p. 75.)
‘ ‘ But it must be done in such a way as not to produce too great a hardship to an existing nonconforming use ”. (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553.)
This court determines that on the effective date of the zoning ordinance a very small portion of the Studier Farm was used for a junk yard. Over 12 acres were on that date and for all practical purposes for the balance of 1955 used for farming. The only area in which a nonconforming business was being conducted was in the rear of the farmhouse and garage north to the orchard and east to a short distance from the O’Brien farm line. The present use of the land that had been under cultivation is an extension of the nonconforming use. It is prohibited by the ordinance and its operation in the area mentioned is contrary to the zoning ordinance. It must cease forthwith. It can operate only in an area back of the house and garage and back to the southern edge of the orchard. The western boundary is along a line eight feet west of the orchard down to the rear of *860 the farmhouse. The mere intent to use more land for a nonconforming use does not throw a protective mantle about the unused part. (Shepard v. Village of Skaneateles, 300 N. Y. 115.)
The case of Town of Somers v. Camarco (308 N. Y. 537) is clearly distinguishable from the case at bar. In that case, when the zoning ordinance was adopted, the plaintiff was conducting on one side of a road an operation that was nonconforming. In the instant case the premises were rented to two different tenants, one of whom used 12 or more acres for a conforming use, and the other who conducted a nonconforming business in a portion of the remainder of the premises. By a subsequent amendment to the zoning ordinance, the right to proceed further with the use of its land was denied plaintiff. The Court of Appeals held this subsequent amendment an interference with a vested nonconforming right. There is no such amendment here, but there is a restriction from extension of a nonconforming use. No matter what may be argued, it is the fact in the case at bar that less than two acres of the Studier property was rented to a tenant for a nonconforming use.
The court declares the rights of the parties to this action as follows: that the zoning ordinance adopted by the Town of Clay is valid; that there was on March 11, 1955 a nonconforming use of about one and one-half acres of the Studier Farm as an auto junk yard; and that since the enactment of the said zoning ordinance the nonconforming use has been extended at least twelve-fold and that such extension was and is improper; that it must desist forthwith and that the ordinance be enforced. In any decree entered, provision for a reasonable period of time to remove the cars and junk now in the prohibited area from that area may be provided for. The plaintiffs are not entitled to the relief sought in their complaint except as heretofore noted. Costs to the defendant and against the plaintiff.
This memorandum is in accordance with section 440 of the Civil Practice Act and is in lieu of findings of fact and conclusions of law. Enter decree accordingly."