In the Matter of DOLOMITE PRODUCTS COMPANY, INC., Respondent, *v.* FRANK F. KIPERS et al., Constituting the Town Board of the Town of Gates, Appellant.

Fourth Department, June 25, 1965.

340

*Neil F. Bubel* for appellant.

*Harris, Beach, Wilcox, Dale & Linowitz (Charles S. Wilcox* of counsel), for respondent.

*Wiedman & Wiedman* for respondent.

*Per Curiam.* Petitioner-respondent corporation was granted a declaration by Special Term that certain lands owned by it had acquired the status of a nonconforming use as respects rock quarrying purposes. Respondent corporation purchased the property during 1925. In these proceedings the land has been referred to as three parcels, designated A, B and C. Parcel A, which is located north of a railroad track which intersects the property, has been operated as a quarry since 1925. Various buildings were constructed and equipment installed and used in connection with the operation of parcel A. The development and use of the property as a quarry is a nonconforming use which

was commenced prior to the adoption of the town ordinance which prohibits the conduct of a quarrying operation in the area in which the property is located.

The land in parcels B and C, south of the tracks, after acquisition by respondent was used as farm lands and for nursery purposes. Since 1925 residential subdivisions have developed in the area south of these parcels and at the date of the application for the permits thousands of homeowners had come into the area and now reside in the vicinity.

Application was made by the respondent for the issuance of excavating and blasting permits for its property, and the refusal of the town to issue the permits as to parcels B and C is the subject of this proceeding. Respondent urges that it has a legal right to the issuance of the permits because it had acquired a vested right to continue the operation of its quarry by reason of its prior nonconforming use.

The record indicates that the operations of respondent have clearly expanded since it acquired the property in question. Gross sales of stone taken from parcel A increased from $10,000 per year at the beginning of the business to approximately $1,500,000 in 1962. Respondent further offered proof that the buildings at the site, located on parcel A, have a book value of approximately $254,000; that it has machinery equipment of approximately $1,795,000 and mobile equipment of $105,000. Respondent urges that to deny the permits would result in serious financial loss. One of respondent's principal officers testified that its present rate of production is approximately 4,000 tons per day and that at this rate it would have quarryable stone in parcel A, north of the tracks, which would keep it in production for a period of 7 to 8 years before being required to exploit the land south of the tracks. Respondent further presented proof that the only development of the area immediately south of the tracks in parcel B was the stripping of topsoil from a limited area south of the railroad right of way in 1949 and the making of some test drills in the stripped area in 1962. Respondent further constructed a berm about 12 or 15 feet high on parcel C as a barrier to protect the residences surrounding parcel C from the effects of the blasting done in the quarrying process.

The principal issue involved in this appeal is whether the nonconforming use made of parcel A can be extended to parcels B and C so as to give these parcels the same nonconforming character which parcel A enjoys. It is clear from the record that no quarrying operations have been carried on in parcels B and C since the acquisition of these properties 40 years ago. Involved in this determination is the balancing of the interests

between the economic loss which may be suffered by the respondent if the permits are denied and the protection of the homeowners in the residential areas immediately adjacent to the property in question. No direct proof has been offered by the respondent as to the financial loss it may suffer. The machinery and mobile equipment which can be moved or salvaged represent approximately 90% of the book value of respondent's investment. No proof was offered as to the value of the land in parcels B and C which, from the exhibits, are apparently good residential building lots of substantial value which can be realized by respondent if its operations are limited to parcel A.

Respondent cites *Town of Somers* v. *Camarco* (308 N. Y. 537) in support of its position. The fact situation there is distinguishable from the case at bar but we believe that the principle asserted by the court at pages 540 to 541 supports the denial of respondent's petition. The court said: "The courts, in order to afford stability to property owners who do have existing nonconforming uses, have imposed the test of reasonableness upon such exercise of the police powers. Therefore broad general rules and tests, such as expressed in *People* v. *Miller* (304 N. Y. 105), must always be considered in this context. In addition, the extent of the reasonable exercise of the police powers varies directly with the degree of the density of the population in the city, town or village involved. * * * A definition of reasonableness can not be made for all occasions, and must, of necessity, be considered anew in the light of each problem presented."

Respondent contends that the reason for purchasing parcels B and C was to work said parcels some time in the future as it is presently operating parcel A. It would be patently unfair to the homeowners who have built residences in the area to hold that the intention to quarry, not carried out over a 40-year period, is sufficient reason to enable respondent to tack on the nonconforming use of parcel A to parcels B and C. The test of the character of parcels B and C should be the use made of these parcels prior to the adoption of the zoning ordinance which now makes quarrying illegal without a permit. It is not consonant with progressive or contemporary planning to permit one to purchase a large parcel of real property, work 35 acres of it and do nothing for 40 years with the balance of 47 acres but, nevertheless, have the right some time in the distant future to make a nonconforming use of it in violation of an ordinance prohibiting it and to the great detriment of adjacent homeowners. Such a philosophy of planning could stunt or kill the growth of substantial areas of property surrounding the parcels in question, for abutting owners would be required to wait, as

in the instant case, for decades to determine the use which could be made of the property. The principle to be applied to the issue before us is that enunciated in *New York Trap Rock Corp. v. Town of Clarkstown* (1 A D 2d 890). The fact situation in that case is quite analogous to the case at bar. Property had been purchased in 1927 and thereafter a comprehensive zoning ordinance was adopted by the town. At that time about 100 houses had been erected in the area. The parcel in question was suitable for residential purposes, as are the parcels B and C in the instant case. The court held (p. 891) that "in view of the harm to the community inherent in the unlimited extension of such quarrying operations as respondent's, the fact that parcel 17 is worth considerably more for quarrying than for residential purposes does not invalidate the ordinance". It is significant that no effort was made by respondent to prove that the parcels in question are more valuable for quarrying than they are for sale as residential lots.

There are residences as close as 110 feet to parcel C. A very large part of the area adjacent to parcel C has in recent years been substantially developed by homeowners. There is no doubt that the highest and best use of the surrounding property is for residential purposes. Upon the facts contained in this record, applying the doctrine of reasonableness, the refusal of the town to issue the excavation and blasting permits was a reasonable exercise of its police powers and should be upheld. The conclusion of the trial court that parcels B and C were in the category of a nonconforming use is contrary to the weight of the evidence.

The order should be reversed and the motion denied.

Del Vecchio, J. (dissenting). I agree with the conclusions of Special Term that petitioner has a nonconforming use as to parcels B and C. I conclude, however, that the nonconforming use should be continued in area B subject to reasonable regulations and that it was properly extinguished by ordinance in area C. (See *Matter of Harbison* v. *City of Buffalo*, 4 N Y 2d 553; *Town of Hempstead* v. *Goldblatt*, 9 N Y 2d 101, affd. 369 U. S. 590.)

The record discloses that in 1925 petitioner acquired for quarrying purposes an 82-acre single parcel of land in the Town of Gates, artificially divided by a railroad right of way, of which 35 acres were located north of the railroad and 47 acres (designated in this proceeding as parcels B and C) were located south of it. At that time the surrounding property was mainly farm land. In 1948 the town adopted a zoning ordinance which zoned area B Industrial E, in which quarrying was permitted,

and zoned area C Residential. In 1950 it adopted an excavation ordinance obviously directed solely at petitioner, regulating the operation of stone quarries. It is undisputed that between 1925 and 1962 petitioner conducted substantial quarrying operations in the 35-acre area north of the railroad and that area was being exhausted so that it was becoming necessary to commence quarrying in parcel B, south of the railroad, and petitioner started to drill rock in such area in 1962. This caused the town to issue a stop-work order directing petitioner to cease any activity south of the tracks without first securing a permit. Petitioner's application for such permit for areas B and C and for cancellation of the stop-work order was denied on February 1, 1963. Sometime around the date of the application and denial, the town adopted a new zoning ordinance which according to the answer on or about January 25, 1963 rezoned area B as M2 Manufacturing, in which zone quarrying is not a permitted use. The zoning map, which is not part of the record and was not before the court, shows that in April, 1963 the zoning ordinance was again changed and made all area south of the railroad residential. It also appears that in 1930, within a few years after acquiring the 82-acre plot, petitioner began discussions with representatives of the railroad and with a public official regarding the possibility of constructing a tunnel under the railroad to obtain adequate access to that portion of the plot which lay south of the tracks. In 1949 it stripped some of the topsoil from that area and also constructed a berm along the south line of the 82-acre tract. The evidence establishes that petitioner did about $1,500,000 worth of business in 1962 and that it has over $2,300,000 invested in land, buildings, machinery, trucks, automobiles and mobile equipment.

I conclude that the operations carried on north of the tracks constituted an appropriation of the entire tract (including B and C) to quarrying use. As this court said in *Matter of Fairmeadows Mobile Vil.* v. *Shaw* (16 A D 2d 137, 142), in determining whether the inception of a nonconforming use on a limited part of a plot constitutes a pre-emption of the entirety of the plot for such use, "The criterion is whether the nature of the incipient nonconforming use, in the light of the character and adaptability to such use of the entire parcel manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance." The nature of the activity in which petitioner is engaged is such that it cannot be carried on simultaneously at every point on the premises. However, its conduct in carrying on substantial, and constantly progressing excavating activities in part of the tract, its longtime concern

with the construction of a tunnel under the railroad tracks so as to make possible the removal of materials quarried south of the tracks to the processing and storage facilities located north of the tracks and its occasional engagement south of the tracks in works preliminary to actual quarrying manifest an appropriation of the entire 82-acre plot to the operation of quarrying. In *Lamb* v. *A. D. McKee, Inc.,* 10 N. J. Mis. Rep. 649), where 1 acre of a 10-acre tract was being excavated for sand and gravel when zoning ordinance was enacted, it was held that the nonconforming use extended to the whole 10-acre parcel as a unit. The *Lamb* case was recently approved in *Moore* v. *Bridgewater Township* (69 N. J. Super. 1); see, also, *County of Du Page* v. *Elmhurst-Chicago Stone Co.,* 18 Ill. 2d 479; *Hawkins* v. *Talbot* (248 Minn. 549). In the case of a quarry, it is not essential that a nonconforming use exercised at the time a zoning ordinance is enacted should have embraced an entire tract, by excavation in every part of the tract, in order to entitle the owner to subsequently employ it all for the use. Some activity on only a part is sufficient to create a nonconforming use for the whole tract. (See *Town of Somers* v. *Camarco,* 308 N. Y. 537.) Accordingly, insofar as the 1963 ordinance excludes quarrying from uses permitted in areas B and C, petitioner has a prior nonconforming use.

In the absence of a provision in the zoning ordinance permitting such uses to continue, I conclude that the town may validly proscribe and terminate such nonconforming use in area C by zoning that area residential. Such zoning, which creates a buffer zone between the quarrying operation and an existing residential area and affects only a small portion of petitioner's land, is a valid exercise of police power, depriving petitioner only of the value of the rock deposit in the land — a loss not sufficient to outweigh the public benefit which will result from the zoning. (*New York Trap Rock Corp.* v. *Town of Clarkstown,* 3 N Y 2d 844.) The same is not true with respect to the ordinance directed at area B. In view of the protection afforded by the buffer zone created by classifying area C as residential, and in view of petitioner's sizable investment in equipment and land and the difficulty in relocating, "the property interest affected by the particular ordinance is too substantial to justify its deprivation in light of the objectives to be achieved by enforcement of the provision." (*People* v. *Miller,* 304 N. Y. 105, 108.)

I conclude that petitioner has a nonconforming use for quarrying in parcel B which is constitutionally protected and should be permitted to continue upon compliance with the requirements of the excavation ordinance but that it is not entitled to continue

its nonconforming use in parcel C, which acts as a buffer zone. Accordingly the order should be so modified.

WILLIAMS, P. J., BASTOW and GOLDMAN, JJ., concur in *Per Curiam* opinion; DEL VECCHIO, J., dissents and votes to modify and to affirm, as modified, in opinion.

Order reversed, without costs of this appeal to either party and motion denied, without costs.