Rose Marra, Respondent, v State of New York, Appellant.
(Claim Nos. 52519, 52761.)

Fourth Department, January 20, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Jean Coon* of counsel), for appellant.

*Hancock, Estabrook, Ryan, Shove & Hust (William Allen* of counsel), for respondent.

## OPINION OF THE COURT

MOULE, J.

The State of New York appeals from two judgments of the Court of Claims. The first awarded claimant the sum of $61,447.10, plus interest for appropriations occurring in 1961 and 1968; the second awarded her the sum of $215,535.34, plus interest as damages for an appropriation occurring in 1969.

Claimant owned four parcels of land located in the Village of East Syracuse which were the subjects of two claims. She

owned 4.679 ± acres of land, referred to as Parcel 1, fronting on East Second Street along its northern boundary, upon which there were buildings and improvements in connection with an automobile salvage operation. The remaining parcels, referred to as Parcels 2A, 2B and 2C, respectively, were situated to the east of Parcel 1, beyond an intervening lot the ownership of which was not established. The largest of the three, Parcel 2A, comprised 26.606 ± acres with frontage also on East Second Street along a portion of its northern boundary. This parcel was separated from Parcel 1 by approximately 500 feet. Directly south of Parcel 2A was Parcel 2B, which contained 8.445 ± acres of backland and was separated from Parcel 2A by a railroad right of way. Further south was Parcel 2C, consisting of 2.330 ± acres of backland separated from Parcel 2B by a second railroad right of way.

In 1932 when claimant acquired the subject parcels of land there was no licensing, zoning or permit requirement existing with respect to her use of the land. In 1954 the village adopted an ordinance requiring a license for the business of junk collecting. Such a license was issued annually between 1954 and 1973 to Central City Used Parts, Inc., a corporation comprised of several members of claimant's family which leased the land from claimant and operated the auto salvage business. By 1956 the village had adopted a zoning ordinance, making the storage of old automobiles for automobile junk-yards in industrial zones subject to the requirement of a special written permit issued by the Board of Appeals. Provision was made for the continuation of nonconforming uses; however, the ordinance prohibited the extension of any non-conforming use to displace a conforming use.

The first claim with which we are concerned arose from the appropriation in 1961 of the two railroad rights of way separating claimant's three easterly parcels and the appropriation in 1968 of one of those parcels, 2C. Following a trial the Court of Claims awarded claimant total damages of $61,447.10, plus interest for these appropriations, of which $2,330 was attributable to the taking of Parcel 2C and $59,117.10 was attributable to the effect on Parcel 2B of the appropriation of the railroad line separating it from Parcel 2A. The court found that with respect to this railroad line, which had been abandoned prior to the taking, there was a reasonable likelihood that claimant could have purchased railroad crossing rights adequate for the development of Parcel 2B before the appro-

priation. Therefore, the court awarded $59,117.10 for the potential use of Parcel 2B of which claimant was deprived. As to the railroad line separating Parcels 2B and 2C, the court found no such likelihood of obtaining crossing rights, inasmuch as the evidence showed that this was a heavily-trafficked main line. Therefore, no damage was attributed to Parcel 2C by reason of the taking of this railroad property.

In its assessment of damages to Parcel 2B the court included the loss of a 30% premium value amounting to $15,201.54 due to a finding that the subject property, which was zoned for industrial use, enjoyed the benefit of a pre-existing nonconforming use as a junkyard. The State's sole contention with respect to this claim is that claimant failed to prove sufficient use of Parcel 2B to establish a nonconforming use under the village zoning ordinance and that, therefore, she was not entitled to have this premium added to the value of parcel 2B.

The evidence adduced at trial clearly showed that Parcel 1 was actively being used for automobile salvage operations at the time of the 1956 zoning enactment and was, therefore, a nonconforming use on that date. With respect to Parcels 2B and 2C the record shows that some cars may have been placed on them, but only for the purpose of showing that eventually the property would be used for salvage operations.

In determining whether the inception of a nonconforming use on a limited part of a plot constitutes a pre-emption of the entirety of the plot for such use, "[t]he criterion is whether the nature of the incipient non-conforming use, in the light of the character and adaptability to such use of the entire parcel manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance" (Matter of Fairmeadows Mobile Vil. v Shaw, 16 AD2d 137, 142, mot for lv to app den 11 NY2d 646; 2 Rathkopf, Law of Zoning and Planning [3d ed], pp 60-3—60-4). Additionally, where a nonconforming use necessarily anticipates occupation of a claimant's entire land holdings, the owner is entitled to have an increment in value attributable to such nonconforming use applied to all of the land (Wholesale Co-Op. Meat Dealers Assn. v State of New York, 45 AD2d 14, 15). However, where the use does not and may not occupy the entire tract, the adjustment in value for the nonconforming use should be limited to that portion of land which the business may reasonably require and lawfully develop in the

foreseeable future, absent appropriation, and the remainder must be valued before and after on the basis of the permitted use within the zone in which it is located *(Wholesale Co-op. Meat Dealers Assn. v State of New York, supra, p 16)*.

■ Here, the use that claimant was making of her property upon the adoption of the village zoning ordinance in 1956 was not of such a nature that it necessarily anticipated or manifestly implied an appropriation of any of Parcel 2B as part of the automobile salvage operations conducted on Parcel 1. The mere intention or hope that the operation would someday extend to claimant's entire land holdings was insufficient to support a finding that Parcel 2B was established as a nonconforming use on the date of the restrictive ordinance *(Breed v Town of Clay,* 21 Misc 2d 856, app dsmd 11 AD2d 625). No substantial use of this separate parcel as part of the junkyard business was made during the time between its purchase in 1932 and the enactment of the ordinance in 1956 *(Matter of Dolomite Prods. Co. v Kipers,* 23 AD2d 339, affd 19 NY2d 739, app dsmd 389 US 214; *New York Trap Rock Corp. v Town of Clarkstown,* 1 AD2d 890, 891, affd 3 NY2d 844, mot to amend remittitur granted 3 NY2d 938, app dsmd 356 US 582); nor was there any evidence that, absent appropriation, the parcel would have been developed as a junkyard within the foreseeable future. Accordingly, the court erred in adding an increment of $15,201.54 to the damages to Parcel 2B as the loss of premium for such use.

■ The existence of a license for the business of junk collecting, issued by the Village Board of Trustees under an ordinance adopted two years prior to the zoning enactment, does not require a different conclusion. The licensing ordinance is a means of controlling the operation of junkyards independent of the special permit requirement of the zoning ordinance which is administered by the Board of Appeals (see 1 Anderson, New York Zoning Law and Practice, § 11.31).

The second claim involved here arose from the appropriation in 1969 of sections of Parcels 1 and 2A. The State appropriated .542 ± acres from the northwest corner of Parcel 2A and a section along a northeasterly diagonal through the center of Parcel 1 comprising 2.422 ± acres, which divided that parcel into two remaining portions. It was on Parcel 1 that the junkyard business had been principally conducted. The court fixed damages to the parcels at $215,535.34 of which $50,536.44 was attributable to the loss of

premium value of Parcel 1 as a nonconforming use and $3,252 was the loss of premium value as a nonconforming use of Parcel 2A.

■ The State concedes that Parcel 1 was operated as a nonconforming junkyard when the village enacted its 1956 zoning ordinance. Nevertheless, it contends that subsequently revised village zoning ordinances, enacted in 1963 and 1965, removed junkyards from those land uses requiring special permits and that, therefore, claimant's salvage operation was a permitted use at the time of the 1969 appropriation and no premium for nonconforming use was proper as to Parcels 1 or 2A. This contention, however, is supported neither by the language of the ordinances themselves nor the record and, therefore, the court did not err in concluding that claimant's junkyard was not a permitted use under the revised zoning ordinances. Inasmuch as Parcel 1 was operated as a nonconforming junkyard from 1956 to 1969, the award of damages attributable to its loss of premium value upon the appropriation in 1969 was proper.

The State contends secondly with respect to this claim that even if junkyards were not permitted uses, claimant had not acquired a legal nonconforming use as to Parcel 2A and that the court erred in ascribing to this parcel an increment for the loss of premium value for such use.

■ The record shows that claimant's use of her property at the time the original zoning ordinance was enacted was not of such a nature as to necessarily anticipate or manifestly imply an appropriation of Parcel 2A as part of the automobile salvage operations *(Wholesale Co-op. Meat Dealers Assn. v State of New York,* 45 AD2d 14, *supra; Matter of Fairmeadows Mobile Vil. v Shaw,* 16 AD2d 137, *supra).* Claimant failed to show any substantial use of Parcel 2A in connection with the junkyard business conducted on Parcel 1 at the time the zoning ordinance was enacted in 1956. In the absence of such use for nonconforming purposes on the date of the enactment of the restrictive ordinance, a nonconforming use was not established *(Matter of Dolomite Prods. Co. v Kipers,* 23 AD2d 339, *supra; New York Trap Rock Corp. v Town of Clarkstown,* 1 AD2d 890, affd 3 NY2d 844, *supra).* Although a number of automobiles were found to be stored on that parcel at a later date, this did not extend claimant's nonconforming use of Parcel 1 to Parcel 2A *(Village of Waterford v O'Brien,* 39 AD2d 490). Accordingly, the court erred in awarding claim-

ant damages of \$3,252 attributable to the loss of premium value of Parcel 2A.

We have examined the State's remaining contention that improved access to Parcel 2A after the appropriation constituted a benefit to that parcel in excess of consequential damages and that such benefit should also be offset against consequential damages to Parcel 1 and find it to be without merit.

The judgment awarding claimant the sum of \$61,447.10 should be modified by reducing it in the amount of \$15,201.54 and the judgment awarding claimant the sum of \$215,535.34 should be modified by reducing it in the amount of \$3,252. The judgments, as modified, should be affirmed.

MARSH, P. J., SIMONS, DILLON and WITMER, JJ., concur.

Judgments unanimously modified, on the law and facts, in accordance with opinion by MOULE, J., and, as modified, affirmed, without costs.