In the Matter of SYRACUSE AGGREGATE CORPORATION, Appellant, v PAUL WEISE et al., Constituting the Town of Camillus Board of Zoning Appeals, Respondents.

Fourth Department, January 24, 1980

**APPEARANCES OF COUNSEL**

*Lombardi, Devorsetz, Stinziano & Smith (Sidney Devorsetz,* of counsel), for appellant.

*Welch, Welch & Carr (Bradley J. Carr* of counsel), for respondents.

**OPINION OF THE COURT**

SCHNEPP, J.

The central issue on this appeal is whether a nonconforming pre-existing use of property for the excavation of sand, gravel and related materials extends to the entire parcel of land or is limited to the area under excavation at the time a municipality adopted a zoning ordinance prohibiting the expansion of nonconforming uses.

The property in question is a 25-acre parcel of land in the Town of Camillus approximately 700 feet wide by 1,600 feet long. The property is bounded on the east by apartments and houses, on the south by an empty field belonging to a school, on the west by a housing development, and on the north by Milton Avenue.[1] Arthur Herring purchased the site in 1926 and over the years extracted from it various grades of sand and gravel, topsoil, and fill which he sold commercially. An area of excavation consisting of approximately five acres is clearly identifiable. Effective September 27, 1961 this property was zoned residential R-3 under a new Camillus zoning ordinance. Section 26-15 of the town's ordinances provides in part:

"All building structures and uses not conforming to the regulations of the district in which they are located at the time of adoption of this Ordinance shall be known and regarded as 'nonconforming'.

"A nonconforming * * * use may be continued subsequent

---

1. The residential development surrounding the parcel occurred after 1961.

to adoption of this Ordinance provided that * * * no such use shall be enlarged or increased to occupy a greater area of land than was occupied at the effective date of the adoption of this Ordinance."

In 1969 the Town of Camillus adopted an ordinance requiring persons to obtain a permit from the town's building inspector before excavating soil or earth (General Ordinances of the Code of the Town of Camillus, ch 11). The issuance of the permit was conditioned upon various requirements stated in the ordinance. In early 1977 the Syracuse Aggregate Corporation ("Syracuse Aggregate") entered into a contract to purchase this property from Mr. Herring contingent upon the acquisition of an excavating permit. At the request of the town authorities Syracuse Aggregate supplied various data relating to the property. It also applied for and received a mining permit from the New York State Department of Energy Conservation. On March 31, 1978 the town's building inspector issued a one-year excavating permit and Syracuse Aggregate consummated its purchase of the property on April 27, 1978. On April 5, 1978 a councilman for the Town of Camillus appealed the issuance of the permit to the Board of Zoning Appeals of the Town of Camillus ("Board") and a public hearing was held on May 3, 1978.[2] At the hearing, aerial and other photographs of the area were presented. Mr. Herring and others also testified as to the use of the property. On July 5, 1978 the Board revoked the permit. This article 78 proceeding to annul its action followed. Special Term dismissed Syracuse Aggregate's petition, holding that the proposal to excavate the deposits from the entire parcel amounted to an expansion of a nonconforming use. We disagree.

The Board argues on this appeal that the nonconforming use "cannot be extended beyond the area of excavation in 1961 when [the] land was placed in a residential R-3 area". Syracuse Aggregate maintains that it fully complied with all of the requirements for the issuance of an excavation permit, that the use of the entire premises is a protected nonconforming use which has not been expanded, and that the Board, which made no findings of fact, erred when it revoked the permit.

---

2. Although the jurisdiction of the Board to revoke the excavation permit is questionable, this issue has not been raised in this proceeding.

■ Although we are empowered to review the Board's determination (CPLR 7803, subd 3), our scope of review is limited. "It is axiomatic that the court will not substitute its judgment for that of the board or set it aside unless it clearly appears to be arbitrary or contrary to law" (*Matter of Fiore v Zoning Bd. of Appeals of Town of Southeast,* 21 NY2d 393, 396).

We could dispose of this appeal at this point simply by stating that the Board did not make findings of fact and, indeed, failed even to apply the law relating to the continuance of nonconforming uses. The only findings of fact that may be gleaned from the Board's resolution revoking the permit are direct quotations from each of the five voting members of the Board which state the personal reasons for each member's decision. This deficiency, standing alone, would support our reversal of Special Term's dismissal of the petition. However, to dispose of this litigation with some finality, we pass on the merits of the issues raised on this appeal.

The parties do not dispute that Mr. Herring was entitled to a nonconforming use. Nor is there any doubt that this right was conveyed to Syracuse Aggregate along with title to the property (*Matter of Putnam Armonk v Town of Southeast,* 52 AD2d 10, 14). It is also clear, however, that under the Camillus zoning ordinance a nonconforming use may not be enlarged or expanded (see *Matter of Off Shore Rest. Corp. v Linden,* 30 NY2d 160, 168). As noted above, the focal issue here is whether Mr. Herring's right to his nonconforming use extended to the boundaries of his entire 25-acre parcel, or was it limited to the 5 acres already excavated.

■ The test for determining whether a nonconforming use extends to the whole tract or only a part thereof has been previously stated by this court: "whether the nature of the incipient non-conforming use, in the light of the character and adaptability to such use of the entire parcel manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance" (*Marra v State of New York,* 61 AD2d 38, 42, quoting *Matter of Fairmeadows Mobile Vil. v Shaw,* 16 AD2d 137, 142; see, also, *Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228, 233).

Generally, New York courts have held that the exception for nonconforming uses is a limited one and that the goal is ultimately to phase out these uses (*Matter of Harbison v City of Buffalo,* 4 NY2d 553, 559-560; *Matter of Cave v Zoning Bd.*

*of Appeals of Vil. of Fredonia, supra).* For example, trailer park owners have not been permitted to increase the number of sites *(Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia, supra; Matter of Fairmeadows Mobile Vil. v Shaw, supra).* Similarly, junkyard operators have not been permitted to engulf formerly unused land *(Marra v State of New York, supra; Breed v Town of Clay,* 21 Misc 2d 856, app dsmd 11 AD2d 625). Also the courts have uniformly rejected attempts to extend a permitted nonconforming use on one parcel to adjoining parcels *(Matter of Dolomite Prods. Co. v Kipers,* 19 NY2d 739, app dsmd 389 US 214; *Marra v State of New York, supra; New York Trap Rock Corp. v Town of Clarkstown,* 1 AD2d 890, affd 3 NY2d 844, app dsmd 356 US 582).

Only a few New York cases have dealt with the unique problem presented by gravel pits and quarries in this context *(Matter of Dolomite Prods. Co. v Kipers, supra; People v Gerus,* 19 Misc 2d 389; *People ex rel. Ventres v Walsh,* 121 Misc 494). The tenor of these cases is to prevent a landowner from extending a nonconforming use of a small area of his land to the entire parcel or extend the use to adjoining lands. These cases do not, however, possess fact patterns which are analogous to the instant case or precipitate an analysis of the unique nature of mining.

Mining is defined as the "excavat[ion of] earth for the purpose of extracting minerals or earth" (American Heritage Dictionary of the English Language). By its very nature mining consists of a gradual expansion of the ground area used; as one mines, the excavated area gets larger or deeper. Moreover, the operation of commercial sand or gravel pits actually diminishes the corpus of the premises. The quarrying business contemplates the continued excavation of the entire parcel of land. The fact that certain areas of the parcel remain untouched is of no moment. "It is in the very nature of [the quarrying] business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously, it cannot operate over an entire tract at once" *(County of Du Page v Elmhurst-Chicago Stone Co.,* 18 Ill 2d 479, 484-485).

The evidence reveals that while Mr. Herring may not have dug a shovel full of dirt from each square foot of the parcel, the nature of his use "manifestly implies an appropriation of the entirety to such use" *(Marra v State of New York, supra,* p 42). The surface of a portion of the land was stripped and

different types of materials were removed from different portions of the entire property. For example, fine gravel was mined from the northern section of the property, while coarse and medium size gravel was extracted from southern parts. A service road from Milton Avenue extending across the length of the parcel provides access to the excavation sites and various work areas. A structure, housing processing equipment used in the preparation of the excavated material, was erected on the site as were other improvements made in connection with the business. No part of the land was devoted to a use other than the continuous operation of a sand and gravel business. As the record reflects, it would be impractical to put the land not currently excavated to any other use, because of the characteristics of its surface and the smallness of the open areas. Clearly, Herring's nonconforming use extended to the whole parcel.

The courts of sister States have recognized that the mining of gravel and other materials constitutes the use of land as a diminishing asset, and, as a nonconforming use, it should be allowed to continue on the entire parcel without being deemed an unlawful extension of a nonconforming use (*Hawkins v Talbot,* 248 Minn 549; *County of Du Page v Elmhurst-Chicago Stone Co.,* 18 Ill 2d 479, *supra; Moore v Bridgewater Twp.,* 69 NJ Super 1; see, also, *McCaslin v City of Monterey Park,* 163 Cal App 2d 339; see, generally, 82 Am Jur 2d, Zoning and Planning, § 198). For example, in *Hawkins v Talbot (supra)* the Supreme Court of Minnesota wrestled with a municipal ordinance which also prohibited, in near identical language to the Camillus ordinance, the enlargement or increase of nonconforming uses or their extension to "occupy a greater area of land than that occupied by such use at the time of the adoption of [the] ordinance". It interpreted the language of the ordinance "to mean all of that part of the owner's land which contains the particular asset, and not merely that area in which operations were actually being conducted at the time of the adoption of the ordinance" (*Hawkins v Talbot, supra,* p 553). Admittedly, the line of demarcation between lawful continuation of a nonconforming use and its expansion is a fine one, but it is one based on logic and reason.

Special Term erred in its application of the rule that nonconforming uses may not be expanded, implementing a blanket rule that no additional land, beyond that utilized as of the time the ordinance became effective, may ever be entitled

to nonconforming usage. This all-encompassing rule is not appropriate in cases where, as here, the entire parcel of land is dedicated to the removal of deposits in the soil and the manifestation that it is so devoted is unmistakably discernible.

The Board also argues that the proposal of Syracuse Aggregate to use additional machinery and expand the hours of operation amounts to an expansion of the nonconforming use. The law, however, indicates that merely increasing the volume of business does not amount to an expansion of a nonconforming use *(Ruhm v C.P. Craska, Inc.,* 59 AD2d 1016; *Gilmore v Beyer,* 46 AD2d 208). Modernizing the equipment and introducing new types of machinery in the gravel pit operation will similarly not amount to an expansion *(McGovern v Anzolone,* 22 Misc 2d 895; see, also, *Hawkins v Talbot, supra;* see, generally, 82 Am Jur 2d, Zoning and Planning, § 203). Recent cases have held, however, that increasing the hours during which the nonconforming use operates is impermissible *(Incorporated Vil. of Williston Park v 280 Hillside Ave. Rest. Corp.,* 55 AD2d 927; see, also, *Town of Oyster Bay v Avalon Yacht & Cabana Club,* 38 AD2d 604).

The town, however, is not without power to adopt measures regulating the nonconforming use *(Matter of Off Shore Rest. Corp. v Linden,* 30 NY2d 160, 164, *supra; Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228, 233, *supra).* It may even provide for the eventual elimination of the use, if the termination provisions are reasonable *(Matter of Harbison v City of Buffalo,* 4 NY2d 553, 562-563, *supra).* But the Camillus Board of Zoning Appeals may not arbitrarily deny Syracuse Aggregate a permit to engage in a use of land to which it has a legal right.

Accordingly, the judgment should be reversed, the revocation of the permit by the Board annulled, and Syracuse Aggregate authorized to conduct the nonconforming use on the entire parcel.

CARDAMONE, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Judgment unanimously reversed, with costs, and determination annulled.