879 F.2d 1061
 Marvin H. GREENE and Lake Anne Realty Corporation,
Plaintiffs-Appellants,
v.
TOWN OF BLOOMING GROVE, Supervisor and Town Board of the
Town of Blooming Grove, Building Inspector of the Town of
Blooming Grove, Planning Board of the Town of Blooming Grove
and Board of Zoning Appeals of the Town of Blooming Grove,
Defendants-Appellees.
 No. 989, Docket 89-7017.
 United States Court of Appeals,
Second Circuit.
 Argued April 6, 1989.
Decided July 17, 1989.
 
 Charles G. Mills, Glen Cove (Payne, Wood & Littlejohn, Daren A. Rathkopf, of counsel), for plaintiffs-appellants.
 Patrick J. Maloney, New York City (D'Amato & Lynch, Robert E. Meshel, of counsel), for defendants-appellees.
 Before KAUFMAN, PRATT and MINER, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiffs Marvin H. Greene and his wholly owned corporation, Lake Anne Realty Corp., (collectively "Greene"), appeal from a summary judgment dismissing, inter alia, their claims under 42 U.S.C. Sec. 1983 alleging (1) that the Town of Blooming Grove, its planning board, its zoning board of appeals, and certain town officials (collectively "Blooming Grove" or "town") deprived Greene of due process and equal protection under the fourteenth amendment by classifying a portion of Greene's land as R-80 residential rather than R-30, and (2) that Greene was deprived of property without due process, also in contravention of the fourteenth amendment, by the town's failure to recognize his claim to a nonconforming bungalow colony use for the full 136 acres designated as a bungalow colony in an approved map dated October 28, 1960.
 
 
 2
 Because Greene has shown no disputed, material issues of fact on his challenge to the R-80 zoning classification of part of his land, we affirm the summary judgment dismissing that claim. On the question of whether Greene's vested nonconforming use as a bungalow colony should extend to the entire parcel, we reverse and remand for further proceedings because triable issues of fact are presented.
 
 I. BACKGROUND
 
 3
 In 1952 Greene purchased approximately 710 acres of land in the Town of Blooming Grove, Orange County, New York--700 acres on the east side of Salisbury Mills Road and 10 acres on the west side. Greene intended to use all of the ten-acre parcel and part of the larger parcel as a vacation resort called Lake Anne Country Club to consist of a hotel, bungalow units, a swimming pool, and other recreational facilities. By June 1953 Greene had built ten two-unit bungalows on the larger parcel.
 
 
 4
 Prior to October 28, 1960, Greene submitted to the town planning board for approval a revised Lake Anne Country Club bungalow colony map, that designated for bungalow colony use a total of 136 acres, including the ten acres on the west side of Salisbury Mills Road. That map showed that by 1960 Greene had added, on the ten-acre parcel on the west side of the road: a luncheonette and cocktail lounge and other buildings including six units and six bedrooms; and on the 126 acres on the east side of the road: (1) on approximately ten acres, most of the now existing 120 bungalow units; (2) on an additional five acres, other buildings containing multiple bungalow units; (3) on another twenty acres, an outdoor pool and athletic facilities, and (4) approximately ten acres of ski facilities.
 
 
 5
 In addition, Greene had already constructed an "infrastructure" to service the entire planned bungalow colony, including a water supply system claimed to be capable of supporting 544 bungalow units, an indoor swimming pool, and an outdoor swimming pool. He was also proposing to construct, and later did construct, a casino.
 
 
 6
 On October 28, 1960, the planning board approved Greene's map showing all the above facilities. In 1973 Greene applied to the planning board for approval of a further revised map of Lake Anne Country Club bungalow colony which would have added 264 new bungalow units to the 123 existing units. Contending that the application fell within a town-wide moratorium on "construction of single-family dwellings in subdivisions and multiple dwellings", the planning board refused to consider the application. In a subsequent article 78 proceeding, the New York Supreme Court, Rockland County, held that Greene's application was not subject to the moratorium. In the Matter of Application of Marvin Greene v. The Planning Board of Blooming Grove, No. 1173/74 (N.Y.Sup.Ct. July 17, 1974) (unreported).
 
 
 7
 The town appealed, but, on October 7, 1974, before the appellate division had ruled on the town's appeal, Blooming Grove repealed its zoning ordinance and replaced it with the Town of Blooming Grove Zoning Ordinance of 1974. Among other changes, the new ordinance eliminated bungalow colonies as a permitted use. Thereafter, the appellate division dismissed the town's appeal as moot.
 
 
 8
 On June 10, 1986, Greene, asserting a vested right to a nonconforming use of the entire 136 acres designated in the approved 1960 map as a bungalow colony, applied to the town's building inspector for a permit to build 419 additional bungalow units conforming with the zoning restrictions applicable at the time bungalow colonies had been a permitted use. Although the town attorney wrote an opinion letter in January 1987 to the building inspector, stating that Greene had no vested right to use the entire 136 acres as a planned bungalow colony, the building inspector has apparently neither issued the permit nor denied the application.
 
 
 9
 The 1974 zoning ordinance also established new residential zoning classifications. Under the ordinance most of Greene's property was placed in an R-30 district (minimum lot size of 30,000 square feet), but approximately thirty-five acres, not a part of the land designated for bungalow colony use, were classified R-80 (minimum lot size of 80,000 square feet).
 
 
 10
 Greene brought this civil rights action in federal district court pursuant to 42 U.S.C. Sec. 1983 claiming, inter alia, (1) that the R-80 classification of a portion of his property was arbitrary and capricious and deprived him of due process and equal protection in violation of the fourteenth amendment, and (2) that failure to permit the use of the entire 136 acres, designated in the 1960 map for use as a bungalow colony, constituted a deprivation of property without due process of law in violation of the fourteenth amendment. Finding no material factual issues in dispute with respect to any of Greene's claims, the district court granted Blooming Grove's motion for summary judgment on all claims. This appeal followed.
 
 II. DISCUSSION
 
 11
 Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when, viewing the record in the light most favorable to the nonmoving party, see United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985), cert. denied, --- U.S. ----, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), there "is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). To defeat such a motion, the nonmoving party must offer " 'concrete evidence from which a reasonable juror could return a verdict in his favor' ". Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir.1988) (quoting Anderson v. Liberty Lobby, 477 U.S. at 256, 106 S.Ct. at 2514). We must analyze Greene's claims under these standards.
 
 A. The R-80 Classification
 
 12
 Greene asserts that material factual issues preclude summary judgment on his claim that inclusion of approximately thirty-five acres of his land in the R-80 district rather than the less restrictive R-30 district deprived him of due process and equal protection in violation of the fourteenth amendment. We disagree.
 
 
 13
 Generally a municipal zoning ordinance is presumed be valid, see City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), and will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective. Id.; Village of Belle Terre v. Boraas, 416 U.S. 1, 4, 8, 94 S.Ct. 1536, 1538, 1540, 39 L.Ed.2d 797 (1974); Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 388-90, 395, 47 S.Ct. 114, 118-19, 121, 71 L.Ed. 303 (1926).
 
 
 14
 Moreover, unless they impinge upon a constitutionally protected fundamental interest, we review zoning ordinances only to determine whether they are arbitrary or unreasonable, see RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 914-15 (2d Cir.1989) ("zoning regulations will survive substantive due process challenge unless they are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare' ") (quoting Ambler Realty Co., 272 U.S. at 395, 47 S.Ct. at 121); Brady v. Town of Colchester, 863 F.2d 205, 215-16 (2d Cir.1988); Horizon Concepts, Inc. v. City of Balch Springs, 789 F.2d 1165, 1167 (5th Cir.1986) (because zoning is a quasi-legislative process, local zoning ordinances are reviewed only to determine if arbitrary and capricious). A federal court typically will not "sift through the record to determine whether policy decisions are squarely supported by a firm factual foundation". City of Cleburne, 473 U.S. at 458, 105 S.Ct. at 3264 (Marshall, J., concurring in judgment in part and dissenting in part) (citations omitted).
 
 
 15
 Significantly, Greene does not contend that the R-80 classification of his property destroys its value or deprives him of any reasonable use of the land. Instead, he argues that the boundary between the R-80 and R-30 districts that crosses his property follows a straight line at approximately 800 feet of elevation until it veers sharply from what Greene calls its "natural, rational and logical course" to an elevation of 620 feet, placing more of Greene's property in the more restrictive district. Greene contends that in drawing this boundary line, the town acted arbitrarily and capriciously, with the sole purpose of depriving him of the same property rights afforded similarly situated landowners.
 
 
 16
 We agree with the district court that the R-80 districts are rationally related to Blooming Grove's legitimate state interests of (1) preventing overcrowding and (2) providing adequate support for single family dwellings on land that is rough and of higher elevation.
 
 
 17
 Even accepting Greene's information that the particular R-80 district in question encompasses land at 620 feet of elevation as well as at 800 feet, we discern no disputed material facts that would preclude summary judgment. First, more than twelve areas throughout Blooming Grove are subject to R-80 use restrictions, and although Greene asserts that he is being treated differently from other similarly situated landowners, he has produced no evidence that only his R-80 land includes some land at 620 feet. Second, even absent evidence from Greene that no other land at 620 feet is zoned in an R-80 district, Blooming Grove is certainly free to classify as R-80 only some of its land having elevations between 620 and 800 feet, since imprecision is permitted in regulations such as those at issue here, see City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (the Supreme Court "consistently defers to legislative determinations as to the desirability of particular statutory discriminations"), and "reform may take place one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); accord City of New Orleans, 427 U.S. at 303, 96 S.Ct. at 2517.
 
 
 18
 Accordingly, because Blooming Grove's R-80 districts are rationally related to legitimate state interests and because Greene has raised no triable issues of fact, we affirm the district court's grant of summary judgment dismissing this claim.
 
 B. Nonconforming Use
 
 19
 Relying on an approved 1960 map that designated 136 acres for use as a bungalow colony, Greene claims a vested right under state law to expand his nonconforming use to the entire parcel by building 419 additional bungalow units. Denial of this right, Greene claims, constitutes a deprivation of property without due process. He further contends that because there are genuine issues of material fact as to the nature and extent of his vested right, the district court erred in granting summary judgment against him. We agree that a disputed question of material fact remains and, therefore, reverse and remand this claim for further proceedings.
 
 
 20
 To state a claim under the fourteenth amendment for deprivation of a property right without due process of law in the context of a zoning dispute, Greene must establish that he has a protectible property interest as defined by state law. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see also RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 915-18 (2d Cir.1989).
 
 
 21
 This circuit uses an entitlement or property-interest analysis to determine if a plaintiff's claimed interest in land is sufficient to constitute "property" under the fourteenth amendment. RRI Realty Corp., 870 F.2d at 917. The analysis focuses primarily on the "degree of official discretion and not on the probability of its favorable exercise". Id. at 918. In RRI Realty Corp., the claimed "property" interest was an entitlement to a building permit. Primarily because the town officials had discretion to either grant or deny the permit, we held that the plaintiff had no entitlement sufficient to trigger fourteenth amendment protection. Id. at 919. In this case, by contrast, the parties do not dispute, and we agree, that Greene's nonconforming use constitutes "property" under the fourteenth amendment. At the time of enactment of the 1974 zoning ordinance, Greene did acquire under New York law, a protectible property right--the right to a vested nonconforming use of at least a portion of his property as a bungalow colony--and he is entitled to continue that use. The only dispute is the scope of his property right. That scope, particularly whether it includes the right to construct additional bungalows on the premises, is determined by state law and is a matter as to which zoning officials have no discretion.
 
 
 22
 Under New York law, a vested nonconforming use is one that existed before enactment of the zoning ordinance prohibiting the use and that is continuously maintained after the zoning changes. City of New York v. Bilynn Realty Corp., 118 A.D.2d 511, 499 N.Y.S.2d 1011, 1014 (1st Dep't 1986). Although a landowner has no vested interest in the existing classification of his property, see Ellentuck v. Klein, 570 F.2d 414, 429 (2d Cir.1978), a zoning ordinance cannot prohibit a use to which the property is lawfully devoted at the time the ordinance is enacted. Syracuse Aggregate Corp. v. Weise, 51 N.Y.2d 278, 284, 434 N.Y.S.2d 150, 153, 414 N.E.2d 651, 654 (1980).
 
 
 23
 To establish a nonconforming use, the person claiming the right must show more than mere contemplated use of property for the nonconforming purpose; he must show the property was indeed used for the nonconforming purpose at the time the ordinance became effective. Syracuse Aggregate Corp., 51 N.Y.2d at 284-85, 434 N.Y.S.2d at 153, 414 N.E.2d at 654. Every inch of the property, however, need not have been embraced by the nonconforming use in order to entitle the entire property to protection as a nonconforming use. Id. at 285, 434 N.Y.S.2d at 153, 414 N.E.2d at 65.
 
 
 24
 The test in New York is "whether the nature of the incipient non-conforming use, in the light of the character and adaptability to such use of the entire parcel, manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance." Fairmeadows Mobile Village, Inc. v. Shaw, 16 A.D.2d 137, 142, 226 N.Y.S.2d 565, 569 (4th Dep't 1962) (quoting Gross v. Allan, 37 N.J.Super. 262, 272, 117 A.2d 275, 280 (1955)); Syracuse Aggregate Corp., 51 N.Y.2d at 285, 434 N.Y.S.2d at 153, 414 N.E.2d 654; Marra v. State of New York, 61 A.D.2d 38, 42, 401 N.Y.S.2d 349, 351 (4th Dep't 1978). Furthermore, when a restrictive zoning ordinance is enacted, an owner may complete his construction of a nonconforming use if substantial construction and substantial expenditures have been made prior to the effective date of the ordinance. Putnam Armonk, Inc. v. Town of Southeast, 52 A.D.2d 10, 14, 382 N.Y.S.2d 538, 541 (2d Dep't 1976).
 
 
 25
 Under these standards, the evidence to show that the character of the nonconforming use extends beyond the developed portion of the 136 acres to the entire parcel, is sufficient to defeat summary judgment. First, the map that was approved on October 28, 1960, specifically designated approximately 136 acres for bungalow colony use, including the 126 acres on the east side of Salisbury Mills Road. Second, Greene produced evidence that approximately fifty-five acres of land, including forty-five acres on the 126-acre portion on the east side of the road, contained bungalow colony units, supporting buildings, or athletic facilities before bungalow colonies became a prohibited use. Further, Greene claims that, including open spaces between buildings and athletic facilities, approximately 100 acres had already been devoted to bungalow colony use before 1974. Third, the "infrastructure", including a water supply system and recreational facilities, all claimed to be capable of servicing the entire planned bungalow colony, had also been put in place before bungalow colonies became a prohibited use. See Telimar Homes, Inc. v. Miller, 14 A.D.2d 586, 586-87, 218 N.Y.S.2d 175, 176-77 (2d Dep't 1961) (construction of infrastructure including water system, roads, drainage system, and model house entitled landowner to a vested right to nonconforming use as to the entire tract). Fourth, although the town has surmised that "[t]he expenses that Greene may have incurred for his infrastructure have surely been recouped by revenue received since the 1960s", Greene by affidavit expressly contradicted this conclusion, stating instead that "[p]laintiffs have not recouped their investment in * * * the casino, * * * the indoor swimming pool in that building, the outdoor swimming pool and the water supply * * *."
 
 
 26
 These circumstances and others create a genuine factual issue as to whether Greene's nonconforming bungalow colony use includes, as a matter of property right under New York law, the construction of the additional bungalow units. In short, because a disputed, material question of fact was raised regarding whether the "nature of the incipient non-conforming use * * * manifestly implie[d] an appropriation of the entirety [of the parcel to the nonconforming] use", Fairmeadows Mobile Village, 16 A.D.2d at 142, 226 N.Y.S.2d at 569, summary judgment was inappropriate on this claim.
 
 C. Other Issues
 
 27
 We have carefully reviewed Greene's other claims, including his claim that he did not abandon use of a certain building as a hotel, and finding no genuine issue of material fact with respect to these claims, we affirm the district court's summary judgment dismissing them.
 
 III. CONCLUSION
 
 28
 The judgment of dismissal is affirmed as to all claims except the claim that the vested nonconforming use of Greene's land as a bungalow colony extends to the entire 136 acres previously approved for bungalow colony use. On that claim the judgment is reversed, and the case is remanded to the district court for further proceedings.