■ CITY OF NEW YORK, Appellant, v BILYNN REALTY CORP. et al., Respondents. CITY OF NEW YORK, Appellant, v GANI REALTY CORP. et al., Respondents. CITY OF NEW YORK, Appellant, v SARAH BESSER et al., Respondents. CITY OF NEW YORK, Appellant, v REROD REALTY INC. et al., Respondents.—Orders, Supreme Court, Bronx County (Santaella, J.), entered on September 5, 1984 and September 14, 1984, which denied the motions of the plaintiff City of New York for preliminary injunctions restraining the unlawful operation of certain businesses by defendants in the four respective actions and temporary closing orders to enforce the preliminary injunctions, reversed, on the law, the facts and in the exercise of discretion, and the motions granted, without costs.

In March and April 1984 plaintiff, the City of New York, commenced the four actions at issue to enjoin permanently as public nuisances, pursuant to Administrative Code of the City of New York § C16-2.3 (a); § C16-2.5 (a), the operation of certain commercial establishments and the use and alteration of certain premises, in flagrant violation of the Building Code and Zoning Resolution. *(See,* Administrative Code §§ C26-109.1, C26-121.5; New York City Zoning Resolution §§ 22-10, 22-20.) The defendants each own or rent first-floor premises in residentially zoned districts in the South Bronx and operate grocery stores therein. The defendant Rerod Realty operates a beauty parlor and a realty office on its premises as well. In conjunction with these lawsuits, the city moved for preliminary injunctions and closing orders to enforce them pursuant to Administrative Code § C16-2.5 (a); § C16-2.10. The City's supporting affidavits stated that despite the issuance of notices of violation, defendants had failed to cease operations, and

criminal penalties were imposed upon at least one named defendant in each action pursuant to Administrative Code, chapter 26, § 643a-12.0, except in the case of *Besser.* In *Besser,* three nonparties had pleaded guilty to criminal informations based upon continued violations of the Building Code and Zoning Resolution and their unlawful operation of a grocery store.

In opposition to the city's motions, defendants conceded their operation of grocery stores in residential districts. Each argued that an injunction was unnecessary since there was no showing of injury to the public and their services provided a convenience and economic benefit for their marginal community. The defendants variously alleged that they had applied, or intended to apply, for use variances or a change in the designation of the zoning district. They claimed an equitable right to use their premises pending exhaustion of administrative remedies to cure their violations.

Special Term (Santaella, J.) denied the motions, holding that the Nuisance Abatement Law (Administrative Code, ch 16, tit C) was intended to restrain prostitution, gambling, drug sales and other dangerous criminal activities, not businesses which, while in violation of the Zoning Resolution and Building Code, had otherwise been issued business licenses by the city. The court found *City of New York v Two Lincoln Sq. Assoc.* (98 AD2d 1000 [1st Dept 1983], *affg without opn,* order, Sup Ct, NY County [Wolin, J.], entered July 27, 1983, index No. 42046/83) distinguishable because it "appear[ed]" that the *Two Lincoln Sq.* defendants had pursued and exhausted their administrative remedies, which it characterized as "due process safeguards", before the city applied for a preliminary injunction. Finally, as to the defendants Gani, Besser and Rerod, Special Term noted that use of the subject premises as medical or dental offices prior to the enactment of the Nuisance Abatement Law may have established a "vested right to continue the nonconforming use." The ensuing appeals from these orders have been consolidated herein. We disagree with Special Term and reverse.

Special Term improvidently exercised its discretion in denying the city's motions for preliminary injunctions. A municipality has authority to obtain temporary restraining orders strictly enforcing its zoning ordinances. The three-pronged test for injunctive relief does not apply; no special damage or injury to the public need be alleged; and commission of the prohibited act is sufficient to sustain the injunction. *(City of New York v Emansal Realty Corp.,* index No. 1377/83, Sup Ct,

NY County, 1984 [Cotton, J.], *affd without opn* 110 AD2d 1094 [1st Dept 1985]; *City of New York v Two Lincoln Sq. Assoc., supra; City of New York v Narod Realty Corp.,* 122 Misc 2d 885, 888 [Sup Ct, Bronx County 1983]; *see also, Little Joseph Realty v Town of Babylon,* 41 NY2d 738, 745 [1977]; *Town of Islip v Clark,* 90 AD2d 500 [2d Dept 1982]; *City of Utica v Ortner,* 256 App Div 1039 [4th Dept 1939].) Plaintiff made a prima facie showing that defendants in each case operated grocery stores which constituted public nuisances in residential districts in violation of the Zoning Resolution and Building Code. Indeed, the certificates of disposition annexed to the city's moving papers evidenced convictions obtained against named defendants in the Gani, Bilynn, and Rerod cases within one year preceding the present actions. Such proof is presumptive evidence of a public nuisance under Administrative Code § C16-2.2 (d), (k).

The defendants have not rebutted the presumption that the Zoning Resolution is constitutional. Their equitable arguments concerning hardship and the allegedly illogical and draconian effect of the ordinances are best addressed to the City Council. Contrary to Special Term's conclusion, the enforcement scheme of the Nuisance Abatement Law is aimed at Building Code and zoning ordinance violations, without the additional requirement that the use involve violations of laws against drug, gambling, prostitution or other crimes. New York City Administrative Code § C16-2.0 clearly reflects the City Council's concern with Building Code and zoning violations. Moreover, section C16-2.2 (d) expressly defines a public nuisance to include uses of property which, while not prohibited by the Zoning Resolution, are unlawful because they were established without the proper building permits and amendments to the certificates of occupancy.

Special Term also erred in relying upon a possible "nonconforming use" exception. A nonconforming use is "[a] use of land which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with use restrictions applicable to the area in which it is situated" (1 Anderson, New York Zoning Law and Practice § 6.02 [3d ed 1984]). Where a nonconforming use exists, it may be permitted to continue after the enactment of a prohibitory zoning ordinance if enforcement would render substantial improvements valueless or cause serious financial harm. *(People v Miller,* 304 NY 105, 109 [1952].) Zoning Resolution § 52-11 (1961, as amended) expressly provides that nonconforming uses "may

be continued, except as otherwise provided". However, the prior uses established by defendants were medical and dental offices. Such offices are a permitted use on the first floor of buildings in residential districts. (Zoning Resolution § 22-14.) Such offices are not prior commercial uses which could give rise to a claimed nonconforming use in these circumstances. Even if the professional offices in the subject premises could be deemed nonconforming uses, only such specific uses could have been continued. The defendants were clearly not entitled to exchange the established professional uses for qualitatively different nonconforming uses. *(Matter of Aboud v Wallace,* 94 AD2d 874, 875 [3d Dept 1983].)

In any event, section 52-11 is only intended to protect existing uses which were legally commenced. *(Jackson & Perkins Co. v Martin,* 12 NY2d 1082 [1963]; Zoning Resolution § 52-01 [1961, as amended].) None of the defendants has demonstrated that their uses were legal when established. Special Term misapprehended the nature of the Nuisance Abatement Law in concluding that its date was germane. It is remedial and procedural, rather than prohibitive or restrictive, in nature. It establishes an enforcement scheme, but does not substantively determine whether a use complies with the Zoning Resolution.

It is also notable that a balancing of equities does not favor the defendants, who failed to act diligently to legitimize their use and occupancy once they were issued notices of violation. In each case they waited to seek administrative relief until after numerous criminal penalties had been imposed, and, except in the case of Rerod, until after the instant actions were commenced. While defendant Bilynn Realty only recently purchased its premises in February 1984, it apparently had knowledge of the outstanding Building Department violations when it did so. Bilynn Realty cannot be said to have been vigilant in asserting its rights since it delayed for four months in applying for an amendment in the designation of its zoning district. Concur—Sullivan, J. P., Kassal and Rosenberger, JJ.

Asch, J., dissents in a memorandum as follows: I would affirm the orders of Special Term denying the city's motions for preliminary injunctions in these four separate actions.

Respondents argued, and Special Term agreed, that the Nuisance Abatement Law (Administrative Code of the City of New York, ch 16, tit C) and City of New York Zoning Resolution are overbroad as applied to the cases herein. Respondents

should have the opportunity to challenge these ordinances on those grounds and should not be foreclosed by a temporary injunction which would be tantamount to summary judgment. Preliminary injunctions in this case would be draconian. They should not issue to prohibit the operation of local "bodegas" which, at most, are in technical violation of the zoning laws. These businesses are not engaged in activity which is otherwise illegal or dangerous to the public health, welfare and safety. Special Term, in denying these motions, recognized these equities and the need for proceeding with due regard for the rights of the parties.

Thus, Administrative Code § 16-2.6 (a) provides that "[p]ending an action for a permanent injunction * * * the court *may* grant a preliminary injunction enjoining a public nuisance within the scope of this article" (emphasis added). By this use of the permissive "may" rather than "shall", the City Council obviously intended the Supreme Court to use its discretion in granting or denying such preliminary injunctions. There was no abuse of that discretion here.