OPINION OF THE COURT
Arthur W. Lonschein, J.
*643 This is a motion for a preliminary injunction, pursuant to Administrative Code of the City of New York § 7-701 et seq., known as the Nuisance Abatement Law. By this motion, the plaintiff City seeks an order closing a commercial establishment known as the "Naked City”, on the ground that its proprietors have allowed it to be used for the purposes of drug sales, thus constituting a public nuisance. For the reasons that follow, the motion is granted.
Among the definitions of a "public nuisance” contained in the Nuisance Abatement Law is that of "[a]ny building, erection or place * * * wherein, within the period of one year prior to the commencement of an action * * * there have occurred three or more violations of any of the provisions of article two hundred twenty, two hundred twenty-one * * * of the penal law.” (Administrative Code § 7-703 [g].) Penal Law article 220 deals with offenses involving controlled substances other than marihuana, and article 221 deals with marihuana offenses. The Nuisance Abatement Law goes on to allow for a preliminary injunction closing the affected establishment, which may be continued by a final judgment for up to one year. ’
On the return of this motion, the court held a hearing as to the grounds for the plaintiff’s motion. The essential facts are not in dispute. The "Naked City” is a dance establishment, wherein patrons pay to watch scantily clad dancers perform. The plaintiff City does not contend that the premises are used for either obscenity or prostitution, and no issue is presented as to those matters.
The plaintiff’s proof establishes that an undercover police detective entered the "Naked City” on nine separate occasions between March 29, 1997 and May 15, 1997, and that on each of the occasions he was able to purchase either cocaine or marihuana from one of the "Naked City’s” dancers. Five separate employees were involved in these sales, known professionally variously as "Ginger”, "Chanelle”, "Violence”, "Ebony”, and an unnamed employee whom the detective described as "JD Red”, for "Jane Doe in a red dress”. "Ginger” was involved in four of the sales, "Chanelle” in three, and "Violence”, "Ebony” and "JD Red” in one each. ("Ginger” and "Chanelle” participated in one sale together.) On six of these occasions, the question of drugs or marihuana was first raised by the detective, and on the other three it was first raised by the employee. On none of the occasions did the detective report any difficulty in obtaining the cocaine or marihuana. Each dancer who approached the detective was willing to sell him cocaine *644 or marihuana. Each of the transactions was consummated in a public area, where it could have been seen by one of the bouncers employed by the proprietors. On several occasions, the dancer left the detective’s immediate view, apparently to obtain the cocaine or marihuana from the bathroom, her locker, from another dancer or from a male accomplice.
One of these sales was in what was described as a "private room”, but which turned out to be a public room reserved for more private, close-up performances by the dancers. The "private room” was some 25 feet square, and was occupied at the time of the sale by several other patrons and dancers as well as a bouncer.
The detective did not observe any drug sales to any other patrons, nor did other officers who entered the establishment make any purchases.
The court had issued a preliminary closing order, pursuant to the terms of the Nuisance Abatement Law. When this was executed, an inventory of the premises was made. The only controlled substances recovered at that time were a plastic bag of marihuana from the female locker room, and a paper packet of cocaine taken from a disk jockey.
One of the managers of the establishment testified on its behalf. It was his testimony that the club had a strict policy against drug sales by its employees. Each of the dancers was required to sign a sheet, each night, acknowledging the club policy in this regard, as well as others, and recognizing that infractions could be met with dismissal. He testified that while the club had no direct knowledge of such sales prior to the service of the order to show cause containing the closing order, two dancers ("Violence” and "Chanelle”) had been fired by him before that time, on the suspicion of such activity.
He testified that the bouncer staff was instructed to see that there was no contact between the dancers and the patrons. There is an employee, whom he described as a "Mom”, downstairs in the dancers’ locker room, to tend to their needs and to make sure that they do not have any drugs.
The management of "Naked City” does not contest that the drug sales took place. Their defense, rather, is that they had taken all steps within their power to control such activity.
The court concludes from this testimony that sales of marihuana and cocaine by the dancers to the patrons were common occurrences at the "Naked City”, and were a prominent feature of its operation. There is no evidence that these *645 sales were made with the direct knowledge or connivance of the proprietors. The fact that no quantities of controlled substances were found when the premises were inventoried is a strong indication that the management was not involved in the actual sales. To the extent that the proprietors had no direct knowledge, however, the conclusion must be that the dancers were out of control in this regard. Accepting the testimony of the manager as true, the sales continued despite the management’s best efforts.
There is no indication whatever that the building’s owners, who are landlords out of possession, were in any way responsible for the illegal conduct, or had any way to know about it. There is no evidence, in particular, that the sales were so notorious as to place a landlord out of possession on notice. It cannot be said, therefore, that the owners bear any culpability for the nuisance.
On a motion for an injunction pursuant to the Nuisance Abatement Law, the usual three-pronged test for injunctive relief (see, Albini v Solork Assocs., 37 AD2d 835; Grant Co. v Srogi, 52 NY2d 496) does not apply. The plaintiff City establishes its entitlement to the injunction simply by proving the illegal conduct during the relevant time period (City of New York v Bilynn Realty Corp., 118 AD2d 511; City of New York v Castro, 143 Misc 2d 766; see also, City of New York v Cincotta, 133 AD2d 244). Moreover, it has been held that the owner’s lack of knowledge of the illegal conduct is not necessarily a bar to the injunction (City of New York v Castro, supra).
Here, the conduct has been proven by clear and convincing evidence. Moreover, the proof is not of isolated instances, but of a persistent series of drug sales, which pervaded the operation of the "Naked City”. The illegal conduct was so pervasive and so blatant that the court concludes that the management could only have remained ignorant of it by willfully turning a blind eye.
The court must be cognizant of the fact that the dancing activity at the "Naked City” is entitled to at least some degree of First Amendment protection. State action, taken to further legitimate objectives unrelated to protected expressive activity, which incidentally burdens that activity, may be sustained if it is no broader than necessary to further the legitimate objectives (People ex rel. Arcara v Cloud Books, 68 NY2d 553; Matter of Town of Islip v Caviglia, 73 NY2d 544). Here, the defendant’s manager explained the efforts that had been taken to keep the "Naked City” free of illegal conduct. As noted, the *646 best view that can be taken is that the employees were out of control, despite the management’s best efforts. The management suggests no further measures that might be taken to correct the situation. Therefore, the court concludes that there is no form of action less restrictive than the closing of this establishment, which might allow it to continue while protecting the public against this public nuisance. In particular, the mere fact that the proprietors have fired the particular employees who sold marihuana and cocaine to the detective does not provide any assurance whatever that the nuisance as a whole has in any way been abated.
As to the owners of the building, the court has noted the lack of evidence that they bear any responsibility for the conduct of the "Naked City”. Upon sufficient proof that the nuisance has been permanently abated, the court will entertain an application to vacate the injunction.