OPINION OF THE COURT
Arthur W. Lonschein, J.
The plaintiff City has moved for a preliminary injunction in *528 this action to enjoin the defendants from operating an establishment doing business as the “Naked City”. It is claimed that the “Naked City” is an adult eating or drinking establishment doing business in violation of section 32-01 (b) of the New York City Zoning Resolution. This action seeks a permanent injunction to abate an alleged nuisance maintained by the defendants in their operation of the alleged adult establishment in a zone designated as a residential zone. If indeed the business is an adult establishment within the meaning of Zoning Resolution § 12-10, it must follow that it is in violation of Zoning Resolution § 32-01 (b) and is, according to the definitions of Administrative Code of the City of New York § 7-701 et seq., subject to closure since any building “wherein there exists or is occurring a violation of the zoning resolution” is defined as a public nuisance. (Administrative Code § 7-703 [k].)
An adult establishment is defined in Zoning Resolution § 12-10 as a place which includes regularly featured live performances in which emphasis is on anatomical areas and/or specified sexual activities are featured and which include displays of the genitals, pubic region, buttocks, anus and female breasts above the areola; male genitals even if covered in an aroused state; sexual activities in a state of stimulation or arousal, actual or simulated acts of masturbation, sexual intercourse, fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast.
By these definitions, the “Naked City” is an adult establishment since there was demonstrated by testimony at the hearing conducted on this motion that almost every defined sex activity was openly conducted and displayed publicly to the customers of the place. The only activity not shown or displayed was that which related to the male sex organs. The very name of the establishment says it all: “naked city”. No one who reads the prominently displayed sign outside the premises could possibly mistake such a place as an art museum featuring the works of Michaelangelo, Peter Paul Rubens, or Picasso, or that it is a medical facility which features the study of anatomy.
Moreover, the advertising of the business proclaims that it holds itself out to the public as an adult establishment. Customers are given a business card which reads in part: “Over 200 Beautiful nude Girls” “lesbian Shows Every Friday & Saturday” “Doors Unzip: Mon-Sat, 6 pm-4am”. In evidence is a magazine dealing in sexual subjects, “Xtreme”, in which Naked *529 City has a full-page ad, in part which reads, “The Greatest Nude Club in New York.”
Nevertheless, the defendant argues that the club is not an “adult establishment” by the definitions of Zoning Resolution § 12-10 which defines an adult establishment as an “adult eating or drinking establishment * * * or other adult commercial establishment” “where a substantial portion” (emphasis supplied) of it relates to the adult activity. It is argued that such adult activity in the club is conducted in less than 40% of the total area and the adult area is separated from the rest of the club by a double curtain 10 feet high.
The court with the consent of the parties and in the presence of their attorneys conducted an on-site inspection of the premises previously closed by a temporary restraining order. The court observed an entrance lobby from the street where a ticket booth charges $10 admission to the premises and which booth fronts a business office. A few steps up, there is a so-called restaurant area which serves food prepared from a broiler and microwave oven, the food consisting of hot dogs, hamburgers, tacos and the like. There are eight small tables in the restaurant area of four seats each. Adjoining the restaurant area is a bar area in which the food is prepared and which serves nonalcoholic drinks. In back of the office, there is a game room which contains a coin-operated pool table with two video games and two television sets. Toward the back of the premises is an elevated stage on which nude dancers perform which is surrounded by seats upon which patrons sit to observe the entertainment. And in the rear of the premises are approximately five booths in which patrons could observe a private performance by one of the dancers.
The stage area is set off from the restaurant area by a double curtain, 9 to 10 feet high held by hangers attached to the ceiling. There is a space of approximately four feet from the top of the curtain to the ceiling and patrons can clearly hear the music coming from a DJ in the stage area, which music is accompanied by dancing on the stage. The defendants argue that the curtain effectively separates the restaurant area and game room from the entertainment areas and thus the so-called 60-40 rule mentioned by Justice Fisher of this court in City of New York v Wiggles (Sept. 23, 1998) and defined by Justice Crane in Supreme Court, New York County, in City of New York v Show World (178 Misc 2d 812) would apply, the entertainment area consisting of less than 40% of the premises. Therefore, concludes the defendant, because of this physical *530 separation of the entertainment section from the restaurant and. game areas, a substantial portion of the premises is not used for adult entertainment.
The court does not accept the contention that the restaurant area in this case can be considered as a separate use from the live entertainment, as was the case in Wiggles (supra). First, there has been no bona fide reconfiguration of the stage area, as was done in Wiggles. All that appears to have happened is that a double curtain has been erected between two preexisting areas, which have not been substantially altered. Further, it appears that the so-called restaurant area is strictly ancillary to the entertainment, and cannot be considered as separate. There are no signs posted inside or outside that food is served and the limited bill of fare hardly qualifies as a restaurant.
Even if the areas are considered as separate, from my observation the stage and its appurtenances, together with the individualized viewing area, clearly constitute more than 40% of the premises accessible to patrons, and so the premises clearly constitutes an adult establishment within the meaning of the Zoning Resolution.
Accordingly, the City has, on this motion, established by clear and convincing evidence that the Naked City is a public nuisance. On a motion for an injunction pursuant to the Nuisance Abatement Law (Administrative Code § 7-701 et seq.), the usual three-pronged test for injunctive relief (see, Albini v Solork Assocs., 37 AD2d 835; Grant Co. v Srogi, 52 NY2d 496) does not apply. The plaintiff City establishes its entitlement to the injunction simply proving the illegal conduct during the relevant time period (City of New York v Bilynn Realty Corp., 118 AD2d 511; City of New York v Castro, 143 Misc 2d 766; see also, City of New York v Cincotta, 133 AD2d 244).
The motion for a temporary injunction enjoining the Naked City is granted. There is no indication whatever that the building’s owners, who are the landlords out of possession, were in any way responsible for the illegal conduct. It cannot be said, therefore, that the owners bear any culpability for the nuisance.