OPINION OF THE COURT
Karen B. Rothenberg, J.
Plaintiff 159-MP Corp., doing business as Food Town, moves, pursuant to CPLR 6301, for a preliminary injunction restraining and enjoining defendant CAB Bedford, LLC from permitting or performing any construction work on, or continued occupancy of, the premises known as and located at 238-242 Bedford Avenue, Brooklyn, New York 11249 (designated on the tax map of the City of New York as block 2351, lot 6) pending final determination of the claims set forth in the summons and complaint. Defendant New York City Department of Buildings (DOB) cross-moves, pursuant to CPLR 3211 (a) (2) and (a) (7), to dismiss plaintiff’s complaint against it.
Background Facts and Procedural History
Plaintiff is the lessor of the property located at 159 North 3rd Street in Brooklyn (block 2352, lot 9) and operates a Food Town supermarket at this location. Bedford owns the property located at 238-242 Bedford Avenue in Brooklyn (block 2351, lot 6) and is in the process of constructing a commercial retail center at this location which will include a Whole Foods market. On March 28, 2011, Bedford filed a form ZRD1 with the New York City Department of Buildings seeking pre-approval of its retail center construction plans as a Type Alt 1, or major alteration, as opposed to a Type NB, or new building. In particular, the application called for the conversion of two *806 manufacturing use buildings into a single retail use building. It is undisputed that requiring the development to go forward as a Type NB (as opposed to an Alt 1) would significantly increase the costs and complexities associated with the project. In fact, in its application to the DOB, Bedford’s architect stated that “[Requiring a filing as a New Building would eliminate the economic feasibility of the project as it is impossible to provide the then required parking for all the commercial floor area on the site or within 500’ of the site.” On May 11, 2011, the DOB approved Bedford’s ZRD1 with certain conditions.
On November 22, 2012, Bedford filed with the DOB a second form ZRD1 (ZRD1 No. 2) requesting a modification of the original ZRD1. In the application, Bedford’s architect stated that “[i]n the previous 18 months, the local economic environment has changed in a significant way. The owner now feels that the local neighborhood can support additional retail space. Therefore they would like to add the maximum as of right commercial bulk to the site as allowed.” As part of the ZRD1 No. 2 application, Bedford’s architect proposed that
“the existing first floor would need to be removed and replaced at [a] lower elevation. Section ZR 11-23 states that ‘the removal of more than 75% of floor area and more than 25% of perimeter walls, and the replacement of any amount of floor area would change the definition of the project from an alteration to a [Type NB] development. No removal of exterior walls is proposed. When completed no floor area would have been removed; but there would be ‘replacement’ of the area of the existing first floor.”
With respect to ZR 11-23, Bedford’s architect further stated that
“[i]t is the opinion of this office that as written, the use of the word ‘and’ between all the sentence clauses makes them inclusive and therefor[e] all three listed criteria would need to be met for a project to no longer be viewed as an alteration. As documented above, no floor area is being removed and none of the exterior walls are being removed. Only one item is triggered, replacement of floor area. It is therefore requested that this additional predetermination be approved, allowing the expanded project scope to proceed to be filed as an Alteration type 1.”
*807 As a final matter, Bedford’s architect again stated that if the DOB required the project to go through as a Type NB development (as opposed to an Alt 1), the project would not be economically feasible.
On December 10, 2012, the DOB approved ZRD1 No. 2 with conditions. In particular, the DÓB stated:
“ZR 11-23 requires both the removal of 75% of the floor area of the existing building with the replacement of any amount of that floor area, and the removal of 25% of the perimeter walls in order to meet the definition of ‘development.’ The proposal involves removal of the existing first floors in order to lower them to accommodate handicapped access to the proposed retail spaces and lowering the cellar slab to accommodate parking in a newly created sub cellar. The removal of the first floor, which is by definition floor area, will create a space between the existing cellar floor and the roof or second floor whose height relative to the base plane is a basement. Lowering of the existing cellar slab to such a level that this new space becomes a cellar which is not floor area by definition constitutes a removal of floor area subject to the 75% limit. However, no perimeter walls are proposed to be removed which fails the second test for becoming a development. The proposed exchange of floor area by re-inserting the first floor at a lower elevation, and lowering the cellar slab and creating a new subcellar is not a development and may proceed as an Alt 1 application.”
Thus, the DOB rejected Bedford’s claim that, as completed, the project would not result in the removal of floor area. Nevertheless, the DOB approved the plan based upon the representation that no perimeter walls were to be removed.
On September 30, 2013, Bedford filed the project as an Alt 1. The DOB approved the application and, on or about December 31, 2013, issued a building permit for the job. Thereafter, construction on the project began. At the present time, work on the project is near completion and the DOB has issued a temporary certificate of occupancy for the retail center.
By summons and complaint dated June 8, 2016, plaintiff commenced the instant action against Bedford and the DOB. The gravamen of plaintiff’s complaint is that Bedford know *808 ingly and intentionally made material misrepresentations about the scope and nature of the construction work in its DOB filings in order to obtain approval of the project as an Alt
1 as opposed to a Type NB development. In particular, the complaint alleges that Bedford represented in its ZRD1 No. 2 application that no perimeter walls would be removed during the construction project and that the DOB approved ZRD1 No. 2 based upon this representation. However, according to the complaint, during the construction work, virtually all of the exterior walls of the existing buildings were demolished and rebuilt from scratch. The complaint further alleges that the DOB has been notified of these material misrepresentations but has failed to revoke the building permits for the project as required under applicable law. Finally, the complaint alleges that plaintiff has been damaged by Bedford’s actions inasmuch as it is located only 400 feet from the retail center and the approval of the project as an Alt 1 resulted in the construction of at least 100 fewer parking spaces than would have been required for a Type NB development. The complaint asserts various causes of action based upon these allegations including a claim for special damages against Bedford, and a judgment declaring that Bedford’s filings contain material misrepresentations, the retail center is in violation of the zoning law, and that the DOB failed to comply with its nondiscretionary duty to revoke the building permits for the project. The complaint also seeks injunctive relief against both Bedford and the DOB. In particular, the complaint seeks a mandatory injunction that Bedford remove and/or demolish any conditions at the retail center which are in violation of the zoning law and the building code. In addition, the complaint seeks a mandatory injunction that the DOB revoke all permits issued in connection with the retail center and that it also revoke the temporary certificate of occupancy. Finally, the complaint asserts a negligence claim against Bedford.
On June 9, 2016, plaintiff sought a temporary restraining order and preliminary injunction enjoining Bedford from performing any construction work or continuing its occupancy of the property. On that same day, Hon. Loren-Baily Schiffman denied the application for a temporary restraining order and made the motion for a preliminary injunction returnable before this court.
*809 Preliminary Injunction
Plaintiff now moves for a- preliminary injunction restraining and enjoining Bedford from permitting or performing any construction work on, or continued occupancy of, the premises pending a final determination on the claims set forth in its complaint. In so moving, plaintiff maintains that it will likely succeed on the merits of its claims. In this regard, plaintiff points to the aforementioned ZRD1 No. 2 application in which the DOB approved Bedford’s plan based upon the representation that no perimeter walls were proposed to be removed. However, according to plaintiff, Bedford has removed and rebuilt virtually all of the perimeter walls of the existing structures during the course of the construction project. In support of this contention, plaintiff submits certain photographs of the construction project which purportedly show that the preexisting structures at the site were reduced to a skeletal state. In addition, plaintiff submits an affidavit by its officer, Foud Elayyan, in which he states that he personally observed construction activity at the job site, which included an almost complete demolition of the existing buildings on the property. Mr. Elayyan further states that this work included excavation and removal of the floors, the majority of the exterior walls, roof, and some interior columns of the existing structures. Finally, plaintiff submits an expert affidavit by Joseph Trivi-sonno, RA, a licensed and registered architect in New York State. According to Mr. Trivisonno, Bedford’s own demolition plans demonstrate that 37% of the exterior walls were to be removed during the course of the project. In this regard, Mr. Trivisonno points to a demolition drawing which contains a “demolition calculations” table indicating that the “[e]xisting linear ft. wall to remain” totaled 63%.
In further support of its motion for a preliminary injunction, plaintiff maintains that, inasmuch as it is seeking injunctive relief based upon the violation of a zoning ordinance, it need not show that it will suffer irreparable harm in the absence of an injunction. In support of this contention, plaintiff cites the Appellate Division, Second Department’s ruling in Thilberg v Mohr (74 AD3d 1055 [2010]). As a final matter, plaintiff avers that the balancing of the equities clearly weighs heavily in its favor inasmuch as Bedford has unclean hands. In particular, plaintiff maintains that Bedford obtained the permit from the *810 DOB under false pretenses — namely the material misrepresentations in its DOB filings., ,
In opposition to plaintiff’s motion for a preliminary injunction, Bedford initially argues that plaintiff has no standing to seek injunctive relief inasmuch as it is motivated solely by its desire to limit competition for its supermarket business. In addition, Bedford argues that plaintiff has not demonstrated a likelihood of success on the merits inasmuch as the DOB approved the development plans and plaintiff cannot overcome the high degree of judicial deference owed to the DOB. Further, Bedford submits an expert affidavit by Adrian Figueroa, a licensed architect in New York State, in which he avers that the building plans approved by the DOB were in compliance with all zoning laws. Finally, Mr. Figueroa contends that there is no merit to plaintiff’s claim that Bedford improperly demolished the buildings’ perimeter walls. Specifically, Mr. Figueroa states that “such wall did not exist prior to [Bed-ford’s] purchase of the building.”
In further opposition to the motion, Bedford argues that plaintiff has failed to show that it will suffer irreparable harm if an injunction is not granted. In this regard, Bedford maintains that plaintiff is required to make such a showing under relevant Second Department case law. Finally, Bedford argues that a balancing of the equities weighs against granting a preliminary injunction. In particular, Bedford notes that leases for almost the entire building have already been executed and many tenants already occupy their spaces within the retail center. Thus, Bedford maintains that granting a preliminary injunction would lead to a cascade of unintended results including preventing existing tenants from enjoying the benefits of their tenancy and possibly causing Bedford to default on a $90 million loan with Wells Fargo Bank.
“To obtain a preliminary injunction, the moving party must establish, by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury absent a preliminary injunction, and (3) that the equities balance in his or her favor” (Chase Home Fin., LLC v Cartelli, 140 AD3d 911, 911-912 [2016]). “The decision to grant or deny a preliminary injunction lies within the sound discretion of the Supreme Court” (Matter of Armanida Realty Corp. v Town of Oyster Bay, 126 AD3d 894, 894-895 [2015] [internal quotation marks omitted]).
*811 As an initial matter, the court rejects Bedford’s claim that plaintiff lacks standing to seek an injunction.
“In order to qualify for standing to raise a violation of a zoning ordinance, a party must demonstrate (1) an injury that is different from that of the public at large, and (2) that the alleged injury falls within the zone of interests sought to be promoted or protected by the statute” (Golden v Steam Heat, 216 AD2d 440, 441 [1995]).
Here, plaintiff alleges that its business is located only 400 feet from the retail center. Plaintiff also alleges that Bedford’s violation of the zoning laws will adversely affect its business by reducing the amount of available parking in the area. Contrary to Bedford’s claim, these allegations are sufficient to establish standing (Golden, 216 AD2d at 441).
Turning to the three pronged test for determining whether or not a preliminary injunction is warranted, the court initially notes that, at least as against Bedford, plaintiff’s claims appear to have merit. In particular, as noted above, in its ZRD1 No. 2 application, Bedford took the position that the project qualified as an Alt 1 on two different grounds, namely that it did not involve removing floor area and also did not involve removing exterior walls of the existing structures. However, in conditionally approving the application, the DOB rejected Bed-ford’s argument that the project did not involve removing floor area. Instead, the DOB approved the application based solely upon the representation that no exterior walls would be removed. Moreover, plaintiff has produced evidence in the form of Mr. Elayyan’s affidavit which indicates that a majority of the exterior walls of the existing structures were removed during the construction phase. In addition, plaintiff has produced additional evidence in the form of Mr. Trivisonno’s affidavit and a demolition drawing which indicate that only 63% of the exterior walls were to remain. In contrast, Bedford has failed to adequately address plaintiff’s allegations regarding the removal of exterior walls. Specifically, Mr. Figueroa merely states in his affidavit that “no perimeter walls were removed in connection with the Project as such walls did not exist prior to [Bedford’s] purchase of the Building.” However, it does not appear that Mr. Figueroa has any firsthand knowledge as to the condition of the buildings at the time of purchase. Moreover, the court finds it notable that Bedford has failed to produce an affidavit from anyone with firsthand knowledge *812 (such as an officer or general contractor) denying plaintiff’s allegations regarding the replacement of exterior walls.
With respect to the second prong of the test, as previously-noted, plaintiff has not even attempted to demonstrate that it will suffer irreparable damage in the absence of an injunction. Rather, relying upon Thilberg (74 AD3d at 1055), plaintiff contends that it need not make such a showing. However, plaintiff’s reliance upon this case is misplaced. It has long been held that a municipality or other governmental entity has authority to obtain temporary restraining orders strictly enforcing its zoning ordinances without having to satisfy the three pronged test for injunctive relief (City of New York v Bilynn Realty Corp., 118 AD2d 511, 512 [1986]). Instead, the municipality need only show a likelihood of success on the merits and that the equities balance in its favor. Further, inasmuch as Town Law § 268 (2) authorizes private citizen taxpayers to commence a proceeding upon the refusal of the town to enforce its zoning ordinances, courts have held that such private citizens of a town seeking an injunction against a neighboring property owner need not make the three prong showing (Eggert v LeFever, 222 AD2d 1043 [1995]; see also Town of E. Hampton v Buffa, 157 AD2d 714, 715 [1990]). This is because, by operation of Town Law § 268 (2), the citizen taxpayer steps into the shoes of the town authorities. Thus, in Thilberg, the Second Department ruled the private citizens of the Town of Southold who commenced an action pursuant to Town Law § 268 (2) need not demonstrate irreparable harm in seeking preliminary injunctive relief based upon neighboring landowners’ use of their property in violation of the Town’s zoning ordinance.
However, in the absence of a statute granting a private right of action to enjoin a zoning violation, private citizens seeking such injunctive relief must make the requisite three-part showing, including irreparable harm. For example, like Town Law § 268 (2), Village Law § 7-714 authorizes (village) authorities to institute legal proceedings and seek injunctive relief against property owners who violate village zoning laws. Unlike Town Law § 268 (2), Village Law § 7-714 does not authorize resident taxpayers to institute such proceedings when the local authorities fail to act. Thus, “[a] private [village] litigant seeking a temporary restraining order or preliminary injunction is required to demonstrate a likelihood of ultimate success on the merits, irreparable harm in the absence of relief and a balanc *813 ing of equities in favor of granting relief” (Terry Rice, Practice Commentaries, McKinney’s Cons Laws of NY, Book 63, Village Law § 7-714 at 7).
Here, plaintiff has failed to point to any statute or regulation akin to Town Law § 268 (2) which is applicable in the City of New York. Moreover, as Bedford correctly notes, in a case indistinguishable from the instant matter, the Appellate Division, Second Department held that private tenants in Brooklyn seeking a preliminary injunction against an adjoining business based upon alleged zoning violations were required to demonstrate irreparable harm and the failure to do so required the denial of their motion (Golden, 216 AD2d at 442). Accordingly, inasmuch as plaintiff has failed to demonstrate that it will suffer irreparable harm in the absence of injunctive relief, its motion for a preliminary injunction is denied.[1]
DOB’s Cross Motion to Dismiss
The DOB cross-moves to dismiss plaintiff’s complaint against it pursuant to CPLR 3211 (a) (2) and (a) (7). In so moving, the DOB contends that the court lacks subject matter jurisdiction and the complaint otherwise fails to state a cause of action against it. In particular, the DOB notes that it first issued a permit for the project based upon Bedford’s submissions on December 31, 2013. However, neither plaintiff nor any other party challenged the issuance of this permit or appealed any such challenge with the New York City Board of Standards and Appeals. Under the circumstances, the DOB contends that the court lacks subject matter jurisdiction inasmuch as plaintiff failed to exhaust its administrative remedies prior to seeking relief from the court.
In further support of its cross motion, the DOB contends that, to the extent that plaintiff seeks an order of mandamus compelling the DOB to revoke the permit for the job and the temporary certificate of occupancy, the complaint fails to state a cause of action. In particular, the DOB maintains that an order of mandamus to compel is only available to enforce a clear legal right where a public official has failed to perform a duty enjoined by law, and courts cannot compel an officer vested with discretionary power to exercise it in a particular manner. According to the DOB, there is no law requiring that *814 it revoke its building permits based upon Bedford’s alleged misrepresentations on its application inasmuch as Administrative Code of the City of New York § 28-105.10.1 provides that the DOB “may” suspend or revoke a permit “whenever there has been any false statement or any misrepresentation as to a material fact in the application or submittal documents upon the basis of which such approval was issued.”[2]
To the extent that plaintiff’s claims against the DOB are based upon the allegation that it should not have approved the building plans and issued the building permit in December of 2013 inasmuch as Bedford’s plans as submitted violated the zoning law, such claims must be dismissed pursuant to CPLR 3211 (a) (7). In this regard, “[i]t is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law” Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]). Here, the DOB approved the zoning drawings for the site, approved Bedford’s application for an Alt 1 application, and issued a building permit for the project in late December 2013. However plaintiff never challenged any of those determinations at an administrative level. Thus, not only did plaintiff fail to exhaust its administrative remedies prior to commencing this action, it never even attempted to avail itself of such remedies. Under the circumstances, to the extent that plaintiff’s claims against the DOB are premised upon the allegation that, as submitted, Bedford’s plans were in violation of the zoning laws, such claims must be dismissed (Matter of Allano v Oliva, 72 AD3d 944, 946 [2010]; Matter of Henderson v Zoning Bd. of Appeals, 72 AD3d 684, 686 [2010]; Matter of Wilkins v Babbar, 294 AD2d 186, 187 [2002]).
To the extent that plaintiff’s claims against the DOB are premised upon the allegation that it improperly failed to revoke Bedford’s building permit after it became aware that it approved the permit based upon material misrepresentations in the permit application, plaintiff’s claims against the DOB must also be dismissed. Specifically, “[i]t is well established that mandamus is an extraordinary remedy which will lie only to enforce a clear legal right” (Matter of Young v Town of Huntington, 121 AD2d 641, 642 [1986]). Thus, “[t]he activity that the courts must be careful to avoid is the fashioning of orders or *815 judgments that go beyond any mandatory directives of existing statutes and regulations and intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches” (Klostermann v Cuomo, 61 NY2d 525, 541 [1984]). Here, although the DOB commissioner has the authority to revoke or suspend a permit based upon a material representation in an application, there is no mandatory directive that he or she do so. To the contrary, Administrative Code of the City of New York § 28-105.10.1 provides in pertinent part that
“[t]he commissioner may . . . revoke any permit for failure to comply with the provisions of this code or other applicable laws or rules; or whenever there has been any false statement or any misrepresentation as to a material fact in the application or submittal documents upon the basis of which such approval was issued; or whenever a permit has been issued in error and conditions are such that the permit should not have been issued” (emphasis added).
Thus, this provision does not contain the mandatory directive necessary in order to justify mandamus relief (compare Matter of Jurnove v Lawrence, 38 AD3d 895 [2007] [petitioner stated a cause of action sounding in mandamus to compel inasmuch as Agriculture and Markets Law § 371 provides that “(a) constable or police officer must . . . issue an appearance ticket . . . summon or arrest, and bring before a court or magistrate having jurisdiction, any person offending against any of the provisions of article twenty-six of the agriculture and markets law” (emphasis added)]). Under the circumstances, the determination of whether or not to revoke a permit based upon material misrepresentations in the application is within the discretion of the DOB commissioner and the court has no authority to direct him/her to revoke Bedford’s permit.
Accordingly, the DOB’s cross motion to dismiss plaintiff’s complaint as against it is granted.
Summary
In summary, plaintiff’s motion for a preliminary injunction is denied. The DOB’s cross motion to dismiss plaintiff’s complaint against it is granted.

. In light of plaintiff’s failure to demonstrate irreparable harm, the court need not address the issue of whether a balancing of the equities favors granting or denying the motion for a preliminary injunction.

. Plaintiff has not submitted any opposition to the DOB’s cross motion.